Duane N. SIMONSON, Appellant,

v.

Richard S. SCHWEIKER, Secretary of Health & Human Services, Appellee.

No. 82–1208.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 8, 1982.

Decided Feb. 8, 1983.

William M. Fishman, Schermer, Schwappach, Borkon & Ramstead, Ltd., Minneapolis, Minn., for appellant Duane N. Simonson.

James M. Rosenbaum, U.S. Atty., Mary L. Egan, Asst. U.S. Atty., Minneapolis, Minn., for appellee; Donna Morros Weinstein, Regional Atty., James W. Miles, Asst. Regional Atty., Dept. of Health and Human Services, Chicago, Ill., of counsel.

Before HEANEY and ARNOLD, Circuit Judges, and HENLEY, Senior Circuit Judge.

HEANEY, Circuit Judge.

Duane N. Simonson appeals the district court's[1] judgment affirming the Secretary of Health and Human Services' (Secretary) final decision denying Simonson Supplemental Security Income and Social Security disability benefits. We reverse and remand for further proceedings because the administrative law judge (ALJ) failed to shift the burden of proof to the Secretary, improperly discounted Simonson's subjective reports of pain, applied the Medical-Vocational Guidelines in a case containing significant evidence of a nonexertional impairment, and submitted a defective hypothetical to the vocational expert who testified at the hearing.

Simonson's back was injured on December 31, 1974, when he was rear ended in a company pickup truck. He applied for and received disability insurance benefits from February 12, 1975, through November 30, 1976. Simonson requested a hearing when his disability benefits ceased, but did not appeal the ALJ's decision affirming the termination of his benefits. On November 28, 1978, Simonson filed a second application for disability insurance and an application for Supplemental Security Income. Simonson eventually amended these applications to date back to the November, 1976, termination date. The Secretary denied these claims initially and on reconsideration. Simonson appealed to the Bureau of Hearings and Appeals and a hearing was held on September 28, 1979. The ALJ denied Simonson's claims on March 17, 1980. The Appeals Council approved the decision and denied a subsequent request for reconsideration.

Simonson sought review in the district court of the administrative denials of his claims. The court referred the matter to a United States magistrate who issued a Memorandum Decision and Recommendation affirming the ALJ's decision. In a memorandum order dated October 28, 1981, the court adopted the magistrate's recommendation and granted the Secretary's motion for summary judgment. This appeal followed.

Simonson is forty-three years old and has a ninth grade education. He resides with his wife in a cabin in Northern Minnesota. Prior to his accident, Simonson worked exclusively as a heavy equipment mechanic in the construction and mining industries. The ALJ found Simonson has not engaged in substantial gainful employment since his disability insurance ran out in 1976.[2] Simonson received a lump-sum worker's compensation award of $25,000 in 1977.

Due to continued pain, and after physical therapy proved unsuccessful, Simonson underwent surgery on January 13, 1976. Dr. W.S. Pollard performed a cervical fusion at C 4–5 and C 5–6. Although he experienced relief from pain immediately following surgery, Simonson testified his back and neck have become progressively stiffer and more painful since the operation. Simonson testified this pain prevents him from getting a full night's sleep despite liberal doses of aspirin. He stated his condition varies from day to day. Some days, he is unable to stand for more than fifteen minutes or walk more than a few hundred feet. Other days, he feels better but if he exerts himself over a minimal level, he "pays for it" over the next few days. He can drive only short distances and cannot sit continuously for

1. The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota.

2. This finding took into account a three-month "unsuccessful work attempt" in 1978.

more than two hours. He does not engage in any of his pre-accident hobbies such as bowling, fishing, hunting or maintaining his yard.

At Simonson's hearing, the ALJ admitted into evidence medical reports from four doctors. These reports can be summarized as follows: Dr. Pollard, who performed the original surgery, observed Simonson was unable to sit comfortably through his examination. He noted a "painful and palpable spasm in the left paraspinal and scapular region;" and the range of mobility of the cervical spine was –3 on the basis of 0 to grade 4. Although there was no anesthesia or weakness in the legs, there was a slight bilateral restriction of straight leg raising. Dr. Roger McBride, an osteopathic physician, took x-rays of the dorsal and lumbar spine which revealed "mild anterior wedging of the 4th and 5th lumbar" and a "mild anterior osteofied formation" on the lower vertebra. At the request of the Social Security Administration, Dr. James Phillips, an orthopedic surgeon, extensively examined Mr. Simonson. He found a history of disc degeneration, residual symptoms and low back pain syndrome. He could find no nerve root involvement or neurologic deficit. He stated the subjective symptoms seemed out of proportion to the objective findings, but noted Simonson would probably continue to have subjective symptoms since he had them for four years. Finally, Dr. Ludwig Kroner, an orthopedic physician, diagnosed chronic low back pain and cervical fusions without neurologic deficit.

Based on these medical reports and Simonson's testimony, the ALJ found Simonson could not return to work as a heavy mechanic, but he could perform light and sedentary work. Accordingly, the ALJ denied Simonson's application for benefits and the district court affirmed the denial. Our review of the record in this case reveals a number of legal errors necessitating reversal and remand.

■ The first error of law apparent in the record is that the ALJ did not shift the burden of proof to the Secretary to prove Simonson can do light or sedentary work. The burden shifts once the ALJ concludes the claimant cannot continue performing previous work. *Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir.1982); *Martin v. Harris*, 666 F.2d 1153, 1155 (8th Cir.1981). The ALJ found Simonson incapable of returning to his work as a heavy mechanic. Nothing in the decision indicates that the ALJ took the next necessary step of requiring the Secretary to show Simonson has the residual functional capacity (RFC) to do light or sedentary jobs. To the contrary, the ALJ clearly placed the burden on Simonson to show he could not do these lighter categories of work.[3]

■ To meet this burden, the Secretary must show there are jobs available that realistically suit Simonson's qualifications and mental and physical capabilities. *Cole v. Harris*, 641 F.2d 613, 614 (8th Cir.1981). An initial step toward meeting this burden is proving Simonson's current physical capacity for work, or his RFC. *See McCoy v. Schweiker*, 683 F.2d 1138, 1146 (8th Cir. 1982). "Adequate proof cannot be based on mere theoretical ability to perform some kind of work." *Cole v. Harris, supra*, 641 F.2d at 614 (citation omitted). Thus, the Secretary must offer substantial evidence of Simonson's actual ability to work before job availability in the economy becomes relevant.

■ The Medical-Vocational Guidelines can provide a framework to help determine whether Simonson has the RFC to perform

---

**3.** The ALJ's decision states:

Despite our natural sympathy in this case, we cannot lose sight of the fact that Congress has placed the burden upon claimant to support his right to each and every element of his claim to benefits, by probative, substantial, evidence. The burden of proof is upon the claimant to establish this claim by a "preponderance of credible evidence."
Decision of the ALJ at 11.

[T]he evidence in this case fails to establish that the claimant has been precluded from engaging in "sedentary" or "light" work.
Findings of fact at 13.

certain types of work.[4] The ALJ should not, however, apply these criteria mechanically, but should keep in mind that Simonson must be able to "perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker, supra,* 683 F.2d at 1147 (citation omitted).

■ At oral argument, counsel for the Secretary urged us to find substantial evidence in the record to support the ALJ's finding that Simonson has the RFC to perform light and sedentary work even though the ALJ did not explicitly shift the burden to the Secretary to prove this fact. In reviewing the evidence, we must take into account whatever in the record fairly detracts from its weight. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). We find the evidence insufficient to support the ALJ's decision in this case primarily because the ALJ improperly disregarded Simonson's subjective reports of pain in assessing his disability.

■ Our cases clearly hold that the ALJ may not disregard a claimant's subjective complaints of pain solely because there exists no objective evidence in support of such complaints. *Brand v. Secretary of H.E.W.,* 623 F.2d 523, 526 (8th Cir.1980); *Northcutt v. Califano,* 581 F.2d 164, 166 (8th Cir.1978). Simonson has proved he has a medically verifiable back injury; he need not produce evidence of the cause and effect relationship between this physical impairment and the pain he feels. *Brand v. Secretary of H.E.W., supra,* 623 F.2d at 525. We are compelled to this conclusion because the physiological, functional and psychological consequences of illness and injury vary with each individual. "A back condition may

affect one individual in an inconsequential way, whereas the same condition may severely disable another person who has a greater sensitivity to pain or whose physical condition, due to age, obesity, deformity, or general physical well-being is generally deteriorated." *Landess v. Weinberger,* 490 F.2d 1187, 1190 (8th Cir.1974). Our cases direct the Secretary to treat disability claimants as real individuals with unique reactions to physical trauma. *See, e.g., Brand v. Secretary of H.E.W., supra,* 623 F.2d at 526–527; *Landess v. Weinberger, supra,* 490 F.2d at 1190.

In his decision, the ALJ acknowledges this line of precedent. He nevertheless rejects Simonson's subjective complaints of pain as a matter of credibility. The ALJ may, of course, make credibility findings. In this case, however, the ALJ disbelieves Simonson primarily because the medical reports do not provide an objective basis for Simonson's subjective reports of pain. The ALJ may not circumvent the above cited cases under the guise of a credibility finding. He may disbelieve Simonson's subjective reports of pain because of inherent inconsistencies or other circumstances, but not solely because Simonson cannot show the exact physiological source of his pain.[5]

Simonson's description of his daily routine compared to his pre-accident, long history of full-time work in heavy jobs supports his reports of extreme pain. Here is a man who was accustomed to working long hours and hunting and fishing in his spare time. Now most days his only activity is walking 400 feet to visit neighbors, or driving the short distance into town for a cup of coffee.

In addition, the doctors' reports do not dispute Simonson's reports of pain. Two

---

**4.** Physical exertion requirements for light and sedentary work are found in 20 C.F.R. § 404.-1567(a)–(b) (1981).

**5.** This basis for the ALJ's decision is clearly stated:

The statute precludes the undersigned from making a favorable disability determination based upon subjective complaints unsup-

ported by appropriate clinical and laboratory diagnostic findings.

Decision of the ALJ at 11.

The only other fact the ALJ cites as a reason for disbelieving Simonson's testimony is that he takes only aspirin at present to combat pain. In fact, Simonson testified he took as many as ten aspirin tablets a night in order to sleep four hours. He also testified he wears a back brace.

doctors, including the one commissioned by the SSA, diagnose "low back pain syndrome." Dr. Pollard, Simonson's treating physician, observed a "painful and palpable spasm in the left paraspinal and scapular region." Dr. McBride found slight irregularities of the spine in Simonson's x-rays. Although each doctor noted that the degree of pain Simonson feels is not fully explained by their medical examinations, none states there is no objective basis whatsoever for the pain. The record is devoid of a legitimate basis for the ALJ's credibility determination. He thus clearly erred in discounting Simonson's reports of pain in assessing his disability.

Discounting Simonson's pain necessarily led the ALJ to err in using the Medical-Vocational Guidelines[6] and submitting an incomplete hypothetical to the vocational expert. The Guidelines are predicated on a claimant's *physical* capacity for work. They do not take into account that jobs available to a person with the claimant's physical capacity may not be available to the claimant because of nonexertional impairments such as pain. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e)(2); *McCoy v. Schweiker, supra,* 683 F.2d at 1148. Because Simonson presented evidence that he suffered from disabling pain as well as physical impairments, the Guidelines cannot substitute for vocational expert testimony concerning the jobs a person with Simonson's physical limitations and degree of pain can perform. *Tucker v. Schweiker,* 689 F.2d 777, 780 (8th Cir.1982); *see also McCoy v. Schweiker, supra,* 683 F.2d at 1149.

The ALJ did consult a vocational expert at Simonson's hearing. The ALJ erred, however, in asking the expert to "assume I'd find that claimant has the exertional capacity for light or sedentary work." Hypothetical questions harboring this assumption have been found defective in a long line of cases. *McGhee v. Harris,* 683 F.2d 256, 259 (8th Cir.1982); *Gilliam v. Califano,* 620 F.2d 691, 694 (8th Cir.1980); *Stephens v. Secretary of H.E.W.,* 603 F.2d 36, 41 (8th Cir.1979). The hypothetical questions posed to vocational experts "should precisely set out the claimant's particular physical and mental impairments." *Tennant v. Schweiker, supra,* 682 F.2d at 711 (citations omitted). "The response to a fatally defective question cannot constitute substantial evidence." *McGhee v. Harris, supra,* 683 F.2d at 259.

Accordingly, the decision of the district court is reversed and remanded with directions to remand to the Secretary to either grant Simonson his requested benefits or to hold an additional hearing. If another hearing is held, the burden is on the Secretary to prove Simonson has the RFC to do some type of job and, through the use of a vocational expert, to prove such jobs have been continuously available since November, 1976, the date the Secretary terminated the original grant of disability benefits. In the interest of providing a fair and full hearing, Simonson should also be allowed to present any further medical evidence relevant to his condition.[7] Finally, the ALJ must give serious consideration to evidence of Simonson's pain and is not free to disregard subjective reports of pain solely because they are not fully corroborated by objective medical evidence.

---

**6.** 20 C.F.R. §§ 404.1501 *et seq.* (1981). The ALJ cites Rule 201.26 of Table No. 1 and Rule 202.19 of Table 2 in Appendix 2.

**7.** In this regard, we note Simonson submitted two additional doctors' reports to the Appeals Council that the ALJ has not had an opportunity to evaluate. The letters outline some new medical findings concerning Simonson's condition and new attempts at treatment.