**Aileen C. BALLARD, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

No. 83-0941-CV-W-1.

United States District Court, W.D. Missouri, W.D.

May 4, 1984.

Larry O. Denny, Kansas City, Mo., for plaintiff.

Robert G. Uhlrich, U.S. Atty., F.O. Griffin, Asst. U.S. Atty., Kansas City, Mo., for defendant.

## MEMORANDUM OPINION AND ·ORDER

JOHN W. OLIVER, Senior District Judge.

### I.

This Social Security case pends on cross motions for summary judgment. This Court must therefore review the final decision of the Secretary of Health and Human Services denying plaintiff's claim for a period of disability and disability insurance benefits. Jurisdiction is exercised pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff (claimant) filed her application to establish a period of disability and to obtain disability insurance benefits pursuant to 42 U.S.C. §§ 416(i) and 423, alleging disability beginning October 31, 1980. The claim was disallowed and at plaintiff's request a hearing was held December 15, 1982 before an Administrative Law Judge (ALJ).

The ALJ found for plaintiff and issued his decision on January 25, 1983. The Appeals Council of the Social Security Administration, however, on its own motion, reviewed the ALJ's decision and on June 21, 1983 reversed the ALJ. The Appeals Council found that plaintiff does not have a severe impairment and was not under a disability. The parties agree that the decision of the Appeals Council stands as the final decision of the Secretary.

In reviewing the Secretary's denial of a period of disability and Social Security benefits we must decide whether substantial evidence on the record as a whole supports the Secretary's decision. 42 U.S.C. § 405(g); *Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir.1984). In this case it does not. For the reasons stated below, the decision of the Secretary shall be reversed.

## II.

The ALJ granted plaintiff disability benefits based on finding, *inter alia*, the following: Plaintiff has not engaged in substantial gainful activity since her onset of disability on October 31, 1980; plaintiff's impairments constitute a severe impairment which significantly affects her capacity to perform basic work activities; plaintiff is unable to perform her past relevant work which was semi-skilled and sedentary in nature; plaintiff's maximum residual functional capacity is less than a full range of sedentary work; plaintiff was a "person approaching advanced age" at the onset of her disability, has the equivalent of a "high school" education and her past relevant work has not imparted any significant skills that are transferable; Vocational Rules 201.06 and 201.14, Table No. 1, Appendix 2, Sub-part P, of Social Security Administration Regulations No. 4 direct a finding that, considering her maximum sustained work capacity, age, education and past relevant work experience, plaintiff be found "disabled."

The ALJ explicitly found: "Claimant's testimony as to her impairments, symptoms, limitations and restrictions is credible and persuasive and is supported by a preponderance of the medical evidence, the testimony of her husband and by her appearance and demeanor." He further found that "[w]ithin the framework of the above rule, claimant's nonexertional impairments also limit claimant to the performance of less than a full range of sedentary work and are disabling to her in combination with her other impairments." Thus, the ALJ followed the "orderly and uniform framework for analysis and decision of disability claims" set forth in *McCoy v. Schweiker*, 683 F.2d 1138, 1141–42 (8th Cir. 1982) (en banc).

The Appeals Council decided to review the decision of the ALJ on its own motion because it concluded "the findings and conclusions concerning 'disability' were unsupported by medical evidence establishing a medically determinable basis for the severe symptoms alleged by the claimant." Tr. at

7. In conducting its review, the Appeals Council stated plaintiff would not be found disabled, "based on her symptoms, including pain, unless medical signs or findings show that there is a medical condition that could reasonably be expected to produce these symptoms." Tr. at 10.

The Appeals Council found:

1. The claimant met the special earnings requirements of the Act on October 31, 1980, ... and continues to meet them through at least through [sic] December 31, 1985.

2. The claimant has the following impairments: recurrent tendonitis and tennis elbow, hiatus hernia, mild esophago gastritis, status post congestive labyrinthitis, status post mild pyelonephritis, anxiety and depression.

3. The claimant's subjective complaints of constant pain and other limitations are not fully credible. The claimant may experience periodic discomfort; however, the evidence fails to show that the claimant would have been precluded from performing basic work-related activities ... on or after October 31, 1980.

4. The claimant does not have any ... impairments which significantly limit the ability to perform basic work-related functions; therefore, the claimant does not have a severe impairment.

5. Since the claimant does not have a severe impairment, she was not under a "disability," ... through January 25, 1983, the date of the decision of the administrative law judge.

Tr. at 11.

The last three findings are not supported by substantial evidence. Beause we shall reverse outright rather than remand, it is appropriate to discuss in some detail the evidence before the ALJ and the Appeals Council.

Plaintiff's uncontradicted testimony was that she had worked for Trans World Airlines for fifteen of the eighteen years prior

to the termination of her employment on October 30, 1980. Tr. at 34. For the previous eight years she performed the same semi-skilled job for TWA, taking stacks of tickets off a cart and extracting information from them. All entries required hand writing data on a sheet. Tr. at 39, 40.

In 1973 plaintiff was in an automobile accident, injured her shoulder, back, sustained severe whiplash and subsequently developed chronic pain in the wrist and thumb which she used in writing. Tr. at 42–43. Plaintiff testified that the last three years, 1978–80, "[m]y wrist was hurting. My shoulder hurt. My, my neck would hurt me. It, it hurt so bad I couldn't even sleep at night; and sometimes, there to the last, it hurt so bad I'd, I would cry when I got—went home." Tr. at 45.

Plaintiff testified her right hand bothered her "all the time" and that, even without using it, her arm and shoulder hurts. Tr. at 48. Her back hurts her every day: "I don't sleep at night unless I take the medicine." She testified that she has arthritis in her knees and that about once a week her knees, legs and ankles swell. Tr. at 49–50. She has a hiatal hernia which hurts her, an ulcer and bladder trouble. Tr. at 52. She testified that she can walk about a block, stand comfortably for about 15 minutes and sit for about 40 minutes. Tr. at 55–56. Her husband helps plaintiff cook, do laundry and plaintiff can no longer crochet because of her wrist. Tr. at 60–62. Plaintiff's husband testified under oath that he would have responded "substantially the same" and that in addition, during the previous two to three years, plaintiff had been depressed and cried frequently. Tr. at 64.

Even the physician who rendered an adverse disability determination in response to plaintiff's request for reconsideration stated: "The medical evidence, including orthopedic testing and x-rays, show that you do have degenerative arthritis in the lower back ...." Tr. at 77.

Plaintiff's vocational report showed that when she was able to work, she earned $12,588.00 and that her duties required sitting eight hours a day, with frequent reaching and lifting of boxes weighing from one to ten pounds. Tr. at 82–83.

In addition to listing arthritis, tendonitis, "nervous condition," a hernia and thyroid imbalance, plaintiff's disability report records that whiplash had affected her working ability and concluded: "My right hand swells and I have pains in my arm, back and shoulder." Tr. at 88.

Plaintiff sought medical attention for pain in her right thumb in July 1979. Both Dr. Kelly (Tr. at 98), and Dr. Woehl (Tr. at 100), while ruling out nerve damage, remarked on plaintiff's "discomfort." In September 1979, plaintiff returned to Dr. Kelly with discomfort in the right thumb base area. Tr. at 101. Records of plaintiff's treating physician, Dr. Chiles, which were before the Appeals Council, documented that in 1979 and 1980, long before plaintiff's application for disability, plaintiff "fell down stairs again," (Tr. at 107), "appear[ed] to have soreness in right elbow," (Tr. at 108), and was seen and treated repeatedly for tendonitis myositis. Tr. at 109–11.

The medical records for 1974–79 corroborated plaintiff's testimony in regard to periodic bouts of depression, anxiety, abdominal pains, viral infections, and soreness in her back, knees and hand. Tr. at 111–14. On June 12, 1979, Dr. Chiles noted: "Acute tendonitis of flexor, on the writing hand, she writes all the time, will have to rest it for a week and 2 ccs. soluspan and Nalfon, hot packs." Tr. at 111. Using an endoscope on March 23, 1982, Dr. Wetzel visually confirmed the presence of a hiatal hernia and a pyloric ulcer. Tr. at 123. X-rays taken on March 24th of that year disclosed "a chronic pyelonepritis of mild degree involving the left kidney." Tr. at 124.

Dr. Wetzel wrote that plaintiff's complaints included arthritis of the right wrist, elbow, right shoulder and scapular area. He noted "[t]he patient does experience minimal swelling of the right wrist" and that "much of her pain seems localized to the right upper extremity." Tr. at 135. On December 6, 1982, Dr. Wetzel evaluated

plaintiff and found she could walk or stand less than two hours (Tr. at 165), sit only two to four hours, and lift less than five pounds on a regular basis. Dr. Wetzel further stated that plaintiff's infirmities or restrictions included "chronically swollen writs [wrists] ... intermittently more severe with exacerbations of the migratory arthritis in the respective joints." Tr. at 166. He stated that the plaintiff is "extremely anxious and somewhat depressed" and "currently and continuously" takes "mild anti-depressant drugs." Tr. at 167. On May 11, 1983, Dr. Wetzel wrote a post-hearing letter presented to the Appeals Council. He commented upon plaintiff's "chronic swelling of both wrists" and "constant pain in her wrist, if she lifts anything for any period of time," and that "she constantly has lower back pain ... associated with the diagnosis of osteosarthritus ...." Tr. at 176–77. Dr. Wetzel recited he had treated plaintiff on many occasions during the previous several years and that "[s]he always appears anxious and markedly depressed." He documented that plaintiff takes antidepressant medication three times a day. In regard to the combination of physical and emotional problems, Dr. Wetzel stated: "She has shown no improvement; and, in fact, her condition has worsened." Tr. at 177.

Dr. Ash examined plaintiff on April 19, 1982 at the request of the State and recorded blood pressure of 140/100 (Tr. at 137), "some tenderness generally about the wrists" and diagnosed "degenerative disk disease lumbosacral spine; no evidence of peripheral inflammatory arthritis." Tr. at 138.

Plaintiff submitted documents from TWA which established that during the period January 2, 1979 through February 21, 1980 plaintiff lost 256 hours attributed to her sore thumb. Tr. at 149–50. A letter from TWA also confirmed that during the period March 1979 to February 1980, plaintiff's overall 88.0% of performance of assigned functions on the coding of TWA lifted tickets showed a decrease. Tr. at 151. This deterioration contrasted with plaintiff's performance in 1974, when she received a merit increase for six months perfect attendance and a 104% level of productivity. Tr. at 152.

In December 1982, Dr. Wilcox, a consulting psychologist examined plaintiff and found "a generalized anxiety disorder which includes motor tension, autonomic hyperactivity, apprehensive expectation and increased vigilance... associated with hyperattentiveness." He found it "note worthy" that plaintiff worked at an entry level task after eighteen years of employment and that "[s]he does have a neurosis which should be considered chronic ... but does not account for physical ailments." Tr. at 156. Dr. Wilcox stated: "In my judgment, the stress of repetitive and detailed work ... make Mrs. Ballard's former employment impossible for her to do adequately. It is my further opinion that her age, limited education, and narrow work experience does not suggest either retraining to a new occupation or training in new adaptations to continue an old occupation." Dr. Wilcox concluded: "With the acceptance of the limitations ... of her physical ability, coupled with the handicapping aspects of her current neurosis, in my opinion, she is not employable in today's competitive labor market." Tr. at 157.

### III.

■ The Appeals Council's decision to review the decision of the ALJ as well as the Council's conclusion that the ALJ's findings were not supported by substantial evidence, once again ignored the settled law in the Eighth Circuit. The Appeals Council stated in its report that it concluded the ALJ's findings were not supported by substantial evidence because the ALJ's determination of disability was "unsupported by medical evidence establishing a medically determinable basis for the severe symptoms alleged by the claimant." Tr. at 7. The Court of Appeals repeatedly has held it to be error for the Secretary to deny disability solely because a plaintiff did not show pain by "medically acceptable clinical and laboratory techniques." *Nelson v.*

*Heckler,* 712 F.2d 346, 348 (8th Cir.1983); *O'Leary v. Schweiker,* 710 F.2d 1334, 1342 (8th Cir.1983); *Tucker v. Schweiker,* 689 F.2d 777, 780–81 (8th Cir.1982). The administrative factfinder must give serious consideration to evidence of pain "even though it is not fully corroborated by objective examinations and tests performed on the claimant." *Tucker,* 689 F.2d at 781 (quoting *Northcutt v. Califano,* 581 F.2d 164, 166 (8th Cir.1978)). Recent opinions by the Court of Appeals for the Eighth Circuit have reiterated this fundamental standard. *E.g., Tome v. Schweiker,* 724 F.2d 711, 713 (8th Cir.1984).

■ In this case as in *Tome,* medical evidence did corroborate the plaintiff's pain impairment, as did plaintiff's husband. The Appeals Council found, as it had to find based on uncontradicted evidence, that plaintiff's impairments include recurrent tendonitis and tennis elbow, anxiety and depression.

■ The Council, however, found that plaintiff does not have a severe impairment because, the Council alleges, plaintiff's "subjective complaints of constant pain and other limitations are not fully credible." Tr. at 11. This too was error. Although the Secretary may reject testimony on the basis of credibility, "such rejection must be supported by legitimate reasons for disbelief and cannot be a guise for circumventing the rule that objective evidence is not needed to support subjective evidence of pain." *Tome,* 724 F.2d at 713; *Simonson v. Schweiker,* 699 F.2d 426, 429–30 (8th Cir.1983). It is "simply insufficient" for the Secretary to "suggest in conclusory fashion" that complaints of pain are not credible. *Streissel v. Schweiker,* 717 F.2d 1231, 1233 (8th Cir.1983).

## IV.

The Court of Appeals for the Eighth Circuit has reserved judgment on the validity of disallowing benefits, without further proceedings, where the claimant has not proved that his or her impairment is "severe." Judge Heaney recently commented:

A finding that a claimant is not disabled at this stage ignores the language of the statute which provides for the consideration of the claimant's age, education, and work history. Only rarely will the evidence be sufficient to deny a claimant benefits based on the lack of a severe impairment.

Heaney, *Why the High Rate of Reversals in Social Security Disability Cases?* 7 Hamline L.Rev. 1, 5 (1984)

The Appeals Council, unlike the ALJ, never proceeded past the second step of the sequence mandated by *McCoy.* Having erroneously concluded that plaintiff does not have a severe impairment, the Appeals Council failed to consider whether the Secretary's own regulations direct a finding of disability, whether plaintiff can perform relevant past work or whether plaintiff can do other jobs that exist in the national economy. *See Cornella v. Schweiker,* 728 F.2d 978, 980 n. 4 (8th Cir.1984).

Under certain circumstances, it is appropriate to remand a case to the Secretary to give her an opportunity to meet this burden. *See e.g., Mallett v. Schweiker,* 721 F.2d 256 (8th Cir.1983); *Carlson v. Schweiker,* 715 F.2d 401 (8th Cir.1983); *Jackson v. Schweiker,* 696 F.2d 630 (8th Cir.1983). The factual and procedural background of this case, however, is more similar to recent cases in which the Eighth Circuit has reversed the decision of the Secretary outright. *E.g., Tome, supra; Warner v. Heckler,* 722 F.2d 428 (8th Cir. 1983).

■ In this case, the ALJ adequately developed the record. Substantial evidence on that record supports his finding that plaintiff is entitled to a period of disability and disability benefits. The Secretary has had an ample opportunity to resolve this case at the administrative level and has again chosen to ignore controlling decisions by the Court of Appeals. A remand would thus serve no useful purpose. *Tennant v. Schweiker,* 682 F.2d 707, 710 (8th Cir.1982). We find that there is substantial evidence on the record as a whole that plaintiff is

disabled and conclude that she is entitled to a period of disability and disability benefits.

Accordingly, it is

ORDERED (1) that plaintiff's motion for summary judgment should be and is hereby granted. It is further

ORDERED (2) that defendant's motion for summary judgment should be and is hereby denied. It is further

ORDERED (3) that the final decision of the Secretary should be and is hereby reversed and the case should be and is hereby remanded to the Secretary with directions to determine and distribute disability benefits pursuant to 42 U.S.C. § 423, as of October 31, 1980.