# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-1074

———————

| | | |
|---|---|---|
| Bertha Eichelberger, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Jo Anne B. Barnhart, | * | |
| | * | |
| Appellee. | * | |

———————

Submitted: September 17, 2004
Filed: December 8, 2004

———————

Before LOKEN, Chief Judge, BEAM and SMITH, Circuit Judges.

———————

SMITH, Circuit Judge.

Bertha Eichelberger appeals a district court[1] order affirming an administrative decision denying her social security disability benefits. We find no error and affirm.

## I. *Background*

Eichelberger ceased working on March 20, 2000, complaining of shortness of breath, pain in her shoulder and lower back, a rotator cuff tear, high blood pressure, numbness in her hands and feet, and problems with balance. At that time,

_____

[1]The Honorable Fernando J. Gaitan Jr., United States District Judge for the Western District of Missouri.

Eichelberger was 53 years old, had a high school diploma, and one year of college education. Her relevant work history included employment as a bench assembler, forklift operator, warehouse worker, packer, and production assembler. Eichelberger became primary care giver for her grandchild just prior to leaving her last employment.

Eichelberger sought medical attention and her primary care physician referred her to an orthopedic surgeon, Dr. Scott R. Luallin, for her neck, shoulder, and back complaints. Dr. Luallin attributed her right shoulder pain to a tear of the rotator cuff coupled with a chronic attritional type tear and recommended surgery. To alleviate the pain in her lower back and neck, Dr. Luallin suggested physical therapy. Eichelberger made appointments for physical therapy in early July. On July 6 and 10, however, Eichelberger cancelled her scheduled appointments stating that her grandchild was ill.

On September 1, 2000, Dr. Luallin surgically repaired Eichelberger's right shoulder. About a week later, Dr. Luallin rated Eichelberger's rehabilitation potential as good. He proposed a physical therapy regimen for Eichelberger that consisted of two treatment sessions a week for eight weeks–a total of sixteen treatments. Eichelberger did not complete the prescribed course of physical therapy. She attended one full session and a portion of another before leaving for non-health related reasons. By the end of September, Eichelberger had regained some functionality in her shoulder permitting her to again braid her granddaughter's hair and resume driving. However, Eichelberger told the therapist that she could still not do her household chores.

On September 15, 2000, Eichelberger filed an application for Social Security disability benefits. The Commissioner of Social Security denied her application and she requested a hearing before an Administrative Law Judge ("ALJ").

In January 2001, Dr. Luallin noted that Eichelberger's physical therapy progress was slow but steady. His examination revealed reasonably good strength to external rotation and Jobe's testing.[2] Dr. Luallin suggested that Eichelberger continue with physical therapy. On February 5, 2001, Dr. Luallin observed that Eichelberger had only attended two of her prescribed physical therapy appointments and recommended that she continue with physical therapy. During her March examination, Dr. Luallin remarked that while Eichelberger did not appear to be putting forth her full effort, her range of motion was increasing and she had good shoulder strength and Jobe's testing. On June 26, Dr. Luallin commented that Eichelberger appeared to have pain associated with weather changes, but stated that he was pleased with her progress and encouraged her to independently do the prescribed exercises.

On September 27, 2001, Eichelberger again complained of shoulder pain with weather changes, and Dr. Luallin noted a mild positive impingement. At that time, Eichelberger's shoulder strength remained good and her Jobe's and external rotation testing remained positive. Dr. Luallin indicated that Eichelberger was stable and recommended that she continue to do her prescribed exercises and return when necessary.

On April 4, 2002, an ALJ conducted a hearing on Eichelberger's claim for social security disability benefits. After the hearing, Eichelberger returned to Dr. Luallin and complained of pain in her neck and back. Dr. Luallin observed that Eichelberger had complained of neck and back pain for many years and that she had facet arthritis in her lower back that had been treated with physical therapy. Dr. Luallin performed an examination and once again prescribed physical therapy. Thereafter, an MRI of Eichelberger's neck revealed multilevel degenerative disc changes with the most prominent abnormality at C4-5 and C5-6. Eichelberger also

---

[2]These tests are commonly used to measure the progress of a shoulder recovery.

complained of pain in her knee and an x-ray revealed mild lateral joint-space narrowing. Dr. Luallin prescribed medicine and recommended icing for Eichelberger's knee. In addition, he recommended continued physical therapy for her back.

On June 27, 2002, the ALJ affirmed the Commissioner of Social Security's decision to deny Eichelberger disability benefits. Eichelberger filed for review with the Appeals Council of the Social Security Administration.[3] The Council denied review on September 27, 2002, and Eichelberger appealed the ALJ's decision to federal district court. The district court agreed with the ALJ, and entered summary judgment in favor of the Commissioner of Social Security.

## II. *Discussion*

We uphold the Commissioner's determinations unless they are not supported by substantial evidence on the record as a whole. *Harvey v. Barnhart*, 368 F.3d 1013, 1015 (8th Cir. 2004). By statute, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance but is enough that a reasonable mind would find it adequate to support" the conclusion. *Krogmeier v. Barnhart,* 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). In assessing the substantiality of the evidence, we must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Black v. Apfel*, 143 F.3d 383, 385 (8th Cir. 1998). Under this standard, we do not reverse the Commissioner even if, sitting as finder of fact, we would have reached a contrary result; "[a]n administrative decision is not subject to reversal merely because substantial evidence

---

[3]Missouri is one of the several test states participating in a modification of procedures to include the elimination of reconsideration in the administrative appeals process. *See* 20 C.F.R. § 404.906.

would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150–51 (8th Cir. 1984). "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996).

## A. *ALJ's Credibility Assessment*

Eichelberger first argues that the ALJ improperly assessed her credibility citing *Simonson v. Schweiker*, 699 F.2d 426 (8th Cir. 1983). In *Simonson*, we stated that an "ALJ may not disregard a claimant's subjective complaints of pain *solely* because there exists no evidence in support of such complaints." 699 F.2d at 429 (emphasis added). Accordingly, we held that it is error for an ALJ to disbelieve a claimant's testimony merely because there are no medical reports to provide an objective basis for the subjective report of pain. *Id*.; *but see Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (holding that the absence of medical evidence supporting a claimant's subjective complaints of pain is a factor supporting the discounting of such complaints). We have been careful to explain that an ALJ may disbelieve a claimant's subjective reports of pain because of inherent inconsistencies or other circumstances. *Id.* After all, it is "the statutory duty of the ALJ, in the first instance, to assess the credibility of the claimant." *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004) (citations omitted).

In *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), we set out five factors an ALJ is required to examine when analyzing a claimant's subjective complaints of pain: (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). However, the ALJ need not explicitly discuss each *Polaski*

factor. *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.*

In this case, the ALJ found that Eichelberger had objectively determinable impairments, but also noted that her incentive to work might be inhibited by her long-term disability check of $1,700 per month. *Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir. 1996) (allowing an ALJ to judge credibility based on a strong element of secondary gain). In addition, the ALJ discounted Eichelberger's complaints noting that she ceased employment at the same time she became the primary care giver to her grandchild. Furthermore, the ALJ considered that Eichelberger watched television, read, drove, and attended church. The ALJ paid particular attention to the fact that Eichelberger cancelled several physical therapy appointments and that no physician had imposed any work-related restrictions on her. *Brown v. Chater*, 87 F.3d 963, 965 (8th Cir. 1996) (holding that a claimant's failure to comply with prescribed medical treatment and a lack of significant medical restrictions is inconsistent with complaints of a disabling pain). Based on these findings, the ALJ concluded that Eichelberger's subjective complaints of pain so debilitating as to prevent her from all types of work were not credible. *Davis v. Apfel*, 239 F.3d 962, 967 (8th Cir. 2001) ("Allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations.").

We will not substitute our opinion for that of the ALJ, who is in a better position to assess credibility. *Brown v. Chater*, 87 F.3d 963, 965 (8th Cir. 1996). Here, the ALJ did not rely solely on Eichelberger's lack of objective evidence of pain. Instead, citing to the *Polaski* factors, the ALJ determined that Eichelberger's testimony was not credible. Under the facts of this case, we cannot say that the ALJ improperly weighed the credibility of Eichelberger's subjective claims of pain.

B. *ALJ's RFC Assessment*

Eichelberger next contends that the ALJ improperly assessed her Residual Functional Capacity (RFC). Pursuant to the Social Security Act, the Social Security Administration follows a sequential evaluation process when determining disability. *See* 20 C.F.R. § 416.920; *see also Ramirez v. Barnhart*, 292 F.3d 576, 580 (8th Cir. 2002). During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work. *Id.* If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled. *Id*. The fourth step in this analysis requires the ALJ to determine a claimant's RFC. The thrust of Eichelberger's argument is that the ALJ erred in making an RFC determination without the support of medical evidence.

A disability claimant has the burden to establish her RFC. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). The ALJ determines a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Id*. We have held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). "[S]ome medical evidence" must support the determination of the claimant's RFC, *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir. 2000).

Eichelberger points us to *Nevland*, where we reversed an ALJ's decision because he relied on non-treating, non-examining physicians who formed an opinion

solely by reviewing the reports of treating physicians. In that case, however, the claimant established that he was unable to do past relevant work under step four of the sequential disability process. *Id*. In contrast, the ALJ in this case concluded that Eichelberger, at step four, failed to establish an inability to do past relevant work. *Id.* The burden is on the claimant to demonstrate that he or she is unable to do past relevant work. *Id*. Only when the claimant establishes the inability to do past relevant work does the burden of proof shift to the Commissioner. The Commissioner must then prove, first that the claimant retains the RFC to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform. *Id.*; *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). *Nevland* is thus inapposite.

An ALJ may determine that a claimant is not disabled when he or she can still perform the actual duties of a past relevant job. *Stephens v. Shalala*, 50 F.3d 538, 542 (8th Cir. 1995). The ALJ acknowledged Eichelberger's various ailments, but concluded that she could perform light, nonstressful physical or mental job tasks. The ALJ discounted Eichelberger's subjective claims of pain after finding that they were not supported by medical evidence. Specifically, no physician placed significant limitation upon Eichelberger's work activities. Additionally, the ALJ credited the testimony of a vocational expert who testified that Eichelberger's past work was light and unskilled. When asked a hypothetical question approximating Eichelberger's circumstances, the vocational expert testified that Eichelberger should be able to perform her past duties both as she performed them, and as they were performed on the national scale. The ALJ further looked to the medical notes of Dr. Luallin, Eichelberger's orthopedic specialist, who opined that she had good strength in her shoulder. The ALJ noted that Eichelberger gained relief from physical therapy and that despite her pain she could still perform work activities. Thus, Eichelberger failed to meet her burden of establishing that she was unable to do past relevant work, including work as a bench assembler. *See Metz v. Shalala*, 49 F.3d 374, 378 (8th Cir. 1995).

As indicated above, the ALJ's conclusion under step four is supported by substantial evidence. Nonetheless, Eichelberger argues that the ALJ did not sufficiently develop the record when considering her RFC. An ALJ has the duty to develop the record independent of the claimant's burden in the case. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). However, the burden of persuasion to prove disability and to demonstrate RFC remains on the claimant. *Id*. Here, no crucial issue was left undeveloped; rather, Eichelberger simply failed to show that she was unable to perform her past work. *See Kisling v. Chater*, 105 F.3d 1255, 1257 n.3 (8th Cir. 1997) ("The record itself, however, is sufficiently developed; the documents and testimony simply fail to support Kisling's claims.").

## III. *Conclusion*

We conclude, based on the record as a whole, that the ALJ's decision is supported by substantial evidence. Accordingly, we affirm.

_____