# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

————————

No. 04-3167

————————

David W. Vandenboom,              *

                              *

        Appellant,       *

                              *     Appeal from the United States

    v.                      *     District Court for the

                              *     Southern District of Iowa.

Jo Anne B. Barnhart,        *

Commissioner, Social Security   *         [PUBLISHED]

Administration,              *

                              *

        Appellee.       *


————————

Submitted: March 18, 2005
Filed: June 20, 2005

————————

Before MURPHY, HANSEN, and SMITH, Circuit Judges.

————————

HANSEN, Circuit Judge.

David W. Vandenboom appeals the order of the district court[1] affirming the final decision of the Commissioner of the Social Security Administration, which denied his application for disability insurance benefits. We affirm.

---

[1]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

I.

Vandenboom was 40 years old at the time of the hearing before the ALJ. The Administrative Record indicates that he has a high school education and his past work experience includes employment as a dry cleaning supervisor, janitor, security officer, and food service supervisor. Most recently, he was employed as a building services coordinator for the Iowa Department of Corrections until February 26, 2001. Vandenboom filed for disability insurance benefits in March 2001, asserting he was disabled on the basis of headaches, fatigue, neck pain, forgetfulness, and emotional frustration, and asserting a disability onset date of February 26, 2001.

Vandenboom was injured in a motor vehicle accident on September 28, 1999, when a truck he was driving blew a tire and crashed over a bridge, dropping 25 feet into a creek. He and his son awoke underwater but managed to free themselves from the vehicle and walk out of the creek. He suffered a right scalp laceration, swelling in his left forearm, a partial amputation of the right ear, a deep laceration on his thigh, and numerous small lacerations. He was taken by ambulance to the emergency room of the Keokuk Area Hospital and transferred to the University of Iowa Hospitals and Clinics. A CT scan showed extra cranial soft tissue abnormalities without intra-cranial abnormality. Vandenboom was discharged from the hospital on October 1, 1999, and instructed not to perform heavy lifting for six weeks. After two weeks, he returned to his job in prison maintenance, restricted to light duty.

In November 1999, Vandenboom saw Dr. Deema Fattal in the Department of Neurology at the University of Iowa Hospitals and Clinics, complaining of continued headaches and dizziness, which had neither improved nor worsened since his hospital stay. He reported that the headaches were disturbing his sleep, leaving him fatigued, and he complained of irritability and nervousness. Vandenboom's neurological exam was for the most part normal and unremarkable. Dr. Fattal instructed him to remain on light duty for three more weeks and prescribed medication to deal with his

decreased sleep, a mood abnormality, and headaches. Dr. Fattal performed a neuropsychological evaluation on February 22, 2000, due to complaints of mild memory decrease. Dr. Fattal evaluated his performance as within normal limits in all assessed aspects of cognitive functioning. Dr. Fattal found no evidence of cognitive difficulties or brain dysfunction, but noted that Vandenboom was frustrated because his headaches seemed to be limiting his activities. Vandenboom did not seek further treatment until February 8, 2001, nearly a year after his last visit to Dr. Fattal.

On February 8, 2001, Vandenboom first saw Dr. Marc E. Hines, who noted that Vandenboom had normal tone and strength and normal finger-nose-finger, heel-to-shin, and rapid alternating movements. He was observed to have a normal heel, toe, and tandem walk, and the mental examination revealed no abnormalities, with normal memory, language, and calculations. Dr. Hines's impressions were that Vandenboom suffered from a history of closed head injury with right frontal contusion and a frontal lobe syndrome as well as difficulties with posttraumatic migraine headaches and severe episodic mood swings. On February 26, 2001, Dr. Hines noted persistent headaches and neck pain, fatigue, blurred vision, and depression. He adjusted Vandenboom's medication.

On March 26, 2001, Dr. William McMordie performed neuropsychological testing. Dr. McMordie noted that Vandenboom reported headaches resulting from the accident as his biggest problem. Vandenboom also complained of neck pain and feeling tired, forgetful, and irritable. Dr. McMordie administered a battery of tests including, among others, the Wechsler Adult Intelligence Scale, the Wechsler memory Scale, and the Minnesota Multiphasic Personality Inventory. Vandenboom's scores ranged from average to borderline. Overall, Dr. McMordie stated that the testing results suggested a disturbance in the higher cortical functioning, problems with memory functioning, and emotional turmoil, all caused by the head injury sustained in the 1999 accident. He recommended pharmacological intervention,

which Vandenboom was receiving, and adjustment counseling, which Vandenboom did not pursue.

Vandenboom continued seeing Dr. Hines, reporting ongoing problems with headaches, decreased memory, fatigue, and neck and back pain. In July 2001 Dr. Hines stated that Vandenboom will not be returning to work. In February 2002 Dr. Hines noted that Vandenboom's headaches had improved somewhat, but he still had a lot of neck pain, and Dr. Hines stated that in his opinion, the biggest problem was Vandenboom's weight, which had climbed to 281 pounds. A CT of the head produced normal results in April 2002. In June 2002 Dr. Hines stated that Vandenboom reported a 10% decrease in his headaches and should expect continued improvement.

At the hearing before the administrative law judge (ALJ), Vandenboom testified that although he returned to work after the 1999 accident, he stopped working in February 2001 due to headaches, fatigue, and an inability to stand, lift, and handle stress. He stated he suffers from migraine headaches three to five times a month, each time lasting two to four days and cumulatively resulting in ten to twelve days of sick leave a month. He also stated he has pain in his arm, back, and neck, and suffers from irritability, depression, difficulty sleeping, and dizziness. He has no side effects from his medications, and he still drives an automobile with no restrictions on his driver's license. He stated that he does quite a few chores around the house as long as he sits down when he gets tired. His wife testified that Vandenboom has become violent and irritable since the accident, he has headaches most of the time, and he cannot remember things well.

After considering the extent of Vandenboom's subjective complaints within the framework of Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), the ALJ found that Vandenboom's subjective complaints were not fully credible and that his symptoms were not as limiting as he alleged. The ALJ concluded that although

Vandenboom's impairments are severe, they do not combine to meet or equal a listed impairment.

A vocational expert (VE) testified that a person of Vandenboom's age, education, and experience who suffers from severe headaches but normal cognitive functioning and no physical impairments could perform all of Vandenboom's past relevant work. The VE further testified that even crediting all of Vandenboom's testimony, he would be capable of performing all unskilled work in the sedentary, light, and medium levels. The ALJ concluded that Vandenboom's impairments do not prevent him from performing his past relevant work, and denied benefits. The Appeals Council denied further review, and the district court affirmed.

II.

We review de novo the district court's decision to affirm the Commissioner's denial of social security benefits. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). "In reviewing the district court's decision, we consider whether the ALJ's determination is supported by substantial evidence on the record as a whole." Id. "In assessing the substantiality of the evidence, we must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004). We may not reverse the Commissioner's decision merely upon a finding that we would have reached a contrary conclusion. Id. "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." Id. (citation and internal quotation marks omitted).

Vandenboom first argues that substantial evidence does not support the ALJ's failure to give controlling weight to the opinion of Dr. Hines, the treating neurologist. See 20 C.F.R. § 404.1527(d)(2) (2005) (requiring the Commissioner to give

controlling weight to the opinion of a treating physician if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence"). Here, the ALJ gave good reasons for not giving controlling weight to Dr. Hines's opinions, stating that inconsistencies in the medical record as well as Dr. Hines's failure to document objective medical evidence to support Vandenboom's subjective complaints justified giving his opinions less weight. See Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000) ("We [will] uph[o]ld an ALJ's decision to discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." (citations and internal quotation marks omitted)).

The record supports the ALJ's conclusion that Dr. Hines's diagnosis and impressions were based largely on Vandenboom's subjective complaints with little objective medical support, and the medical report on which he relied was inconsistent with the whole record. Dr. Hines relied on the March 2001 evaluation by one-time examining physician, Dr. McMordie, which noted a disturbance in higher cortical functioning and significant memory problems. The cognitive deficits noted in the testing performed by Dr. McMordie, however, are inconsistent with the prior opinions of both Dr. Fattal and Dr. Hines, finding that Vandenboom's cognitive functioning was normal. Also, a CT scan in April 2002 revealed no abnormalities. "It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks omitted). Dr. Hines was of the opinion that Vandenboom would not be able to return to work, but a treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).

A medical consultant from the State of Iowa Disability Determination Services noted that the divergence of the neuropsychological testing in March 2001 from the normal cognitive findings at the University of Iowa Hospitals and Clinics a mere six months earlier raised concerns about the credibility of Vandenboom's complaints and his performance at the March evaluation. The consultant further noted that the multiple cognitive deficits described by Dr. McMordie were not in accord with clinical expectations in light of the report of no cognitive deficits only six months earlier. The medical consultant concluded that from a purely psychiatric standpoint, Vandenboom's records did not indicate a medically determinable impairment.

Other inconsistencies include the fact that Dr. Hines repeatedly diagnosed Vandenboom with pain in his arms, legs and back, and cervical and lumbosacral strain, yet he imposed no restrictions based on these diagnoses and cited no supporting objective medical findings regarding these alleged impairments. Dr. Hines imposed no restrictions on Vandenboom's ability to drive a motor vehicle in spite of Vandenboom's reports of lightheadedness, debilitating headaches, decreased memory, and poor concentration. The substantial evidence on the whole record supports the ALJ's conclusion that Dr. Hines's opinion was not entitled to controlling weight in this case. The same inconsistencies support the ALJ's decision to give little weight to the opinion of Dr. McCordie.

Vandenboom contends that the February 8, 2001, opinion of Dr. Hines and the February 2000 report of Dr. Fattal, each finding normal cognitive functioning, do not present relevant inconsistencies because he is asserting an onset date of February 26, 2001, which was his last day of work and subsequent to both of those opinions. We disagree. The ALJ was entitled to consider all of the evidence in the record. All of the medical evidence indicates that Vandenboom's headaches and related problems resulted from the September 1999 accident with no intervening trauma and no indication that his symptoms were deteriorating or were progressive in nature. Thus,

there is no valid reason to exclude consideration of medical records dated prior to Vandenboom's alleged date of onset.

We reject out of hand Vandenboom's conclusory assertion that the ALJ failed to consider whether he met listings 12.02 or 12.05C because Vandenboom provides no analysis of the relevant law or facts regarding these listings.

Vandenboom's final argument is that the ALJ improperly determined his residual functional capacity (RFC) by providing the VE with a defective hypothetical question that failed to properly set forth his cognitive limitations. The hypothetical question need only include those impairments and limitations found credible by the ALJ, see Forte v. Barnhart, 377 F.3d 892, 897 (8th Cir. 2004), and the claimant bears the burden to establish that he or she cannot return to past relevant work, Eichelberger, 390 F.3d at 591. The April 2002 CT scan, the February 2000 opinion of Dr. Fattal, and the February 2001 opinion of Dr. Hines all support the ALJ's conclusion that Vandenboom is within the normal limits of cognitive functioning. Furthermore, it is significant that no physician placed any limitation upon Vandenboom's work activities. See id. The ALJ's decision not to include severe cognitive limitations in the hypothetical question was supported by substantial evidence in the whole record.

III.

Accordingly, we affirm the judgment of the district court.

_____

-8-