# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 06-2363

————————

Melissa C. Pirtle,                                          *
                                                           *
        Appellant,                              *
                                                           *
                                                           *    Appeal from the United States
    v.                                                 *    District Court for the Western
                                                           *    District of Missouri.
Michael J. Astrue,[1]                                      *
Commissioner, Social Security                              *
Administration,                                            *
                                                           *
        Appellee.                               *

————————

Submitted: December 15, 2006
Filed: March 15, 2007

————————

Before WOLLMAN, RILEY, and SHEPHERD, Circuit Judges.

————————

SHEPHERD, Circuit Judge.

    Melissa C. Pirtle applied for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. § 405. Pirtle's applications for benefits were denied by the Commissioner of the Social Security Administration ("Commissioner"). The

———————————————

    [1] Michael J. Astrue has been appointed to serve as Commissioner of Social Security, and is substituted as appellee pursuant to Federal Rule of Appellate Procedure 43(c)(2).

district court[2] affirmed the decision of the Commissioner. From that decision, Pirtle appeals. We affirm.

I.

Pirtle applied for benefits on June 15, 2001. At the time of the administrative law judge's ("ALJ") decision, Pirtle was thirty-two years old and had a high school education. She had past relevant work experience as a sewing machine operator, dairy laborer, and dairy milking machine operator. Pirtle alleged an onset date of April 1, 2000, in her applications for benefits. However, the onset date was later amended to reflect the alleged onset date of June 7, 2001. The amendment was necessary to properly reflect the relevant periods of her prior unsuccessful applications for benefits, from which she sought no judicial review.

Pirtle alleged she was entitled to disability benefits due to degenerative joint disease of the knee, fibromyalgia, joint pain, headaches, stomach pain, heart palpitations, fatigue, neck strain, gastritis, lumbar pain and strain, scoliosis, and thoracic strain. Following the sequential analysis, the ALJ first found that Pirtle had not engaged in substantial gainful activity during the relevant period. At steps two and three of the sequential analysis, the ALJ found that Pirtle's impairments were "severe" within the meaning of the Social Security Act, but that the impairments did not meet or equal any listed impairment. At the fourth step, the ALJ determined that Pirtle had the residual functional capacity ("RFC") to perform a significant range of light work, including the ability to "occasionally lift 20 pounds and frequently carry 10 pounds . . . stand and walk a total of 4 hours daily, 2 hours at a time . . . sit 4 hours daily, for 1 hour at a time . . . occasionally climb, stoop, kneel, crouch, and bend."

--------

[2]Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

The ALJ also found that Pirtle should avoid heights and hazardous unprotected moving equipment, and that she would benefit from fifteen minute rest periods every three hours. The ALJ determined that, with these limitations, Pirtle could not perform any of her past relevant work. At step five of the sequential analysis, the ALJ relied on the testimony of a vocational expert ("VE") and found Pirtle was not disabled because there are other jobs available in substantial numbers in the national economy which Pirtle could perform.

On December 10, 2003, the administrative law judge ("ALJ") issued the final decision of the Commissioner denying Pirtle's claims. Following the denial of review by the Appeals Council, Pirtle appealed the denial of benefits to the district court. The district court affirmed the findings of the Commissioner. From that decision, Pirtle appeals.

On appeal, Pirtle argues that the ALJ erred by: 1) declining to give controlling weight to the opinion of her primary treating physician; 2) failing to consider the severity and disabling nature of fibromyalgia; and 3) finding her testimony less than fully credible.

II.

This court reviews a district court's decision upholding the denial of social security benefits *de novo*. Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006). If the decision of the Commissioner is supported by substantial evidence on the record as a whole, we must affirm. Harris v. Barnhart, 356 F.3d 926, 928 (8th Cir. 2004). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the ALJ's determination. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). We must consider the evidence which detracts from

the Commissioner's decision, as well as the evidence in support of the decision. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006). However, we will not reverse simply because some evidence supports a conclusion other than that of the Commissioner. Pelky, 433 F.3d at 578. Likewise, we must defer to an ALJ's well-reasoned determinations of credibility if they are supported in the record by substantial evidence. Id.

III.

Pirtle argues that the ALJ erred in failing to give appropriate and controlling weight to the opinion of Michael D. Ball, D.O., her primary treating physician. We are not persuaded by Pirtle's argument.

A treating physician's opinion is due "controlling weight" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as whole." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001). When a treating physician's notes are inconsistent with his or her residual functional capacity assessment, we decline to give controlling weight to the residual functional capacity assessment. See Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006).

Dr. Ball completed two RFC assessments for Pirtle. The first was completed on March 16, 2001, and the second was completed on July 18, 2003. Dr. Ball's March 16, 2001, RFC analysis indicated that Pirtle has the following work related abilities and restrictions: frequently lift/carry five pounds; occasionally lift/carry ten pounds; stand/walk for three hours; sit for four hours; perform only limited push/pull motions;

-4-

frequently balance; occasionally stoop, kneel, crouch, and bend; never climb; occasionally reach, handle, and finger; frequently feel; unlimited ability to see, hear and speak; environmental restrictions including restricted exposure to heights and vibrations; and he noted that it was unknown as to whether periods of rest would be medically helpful to Pirtle. Pirtle's previous applications for benefits were denied on June 6, 2001, and were not appealed. Hence, the relevant time period for the current claims must begin after June 6, 2001. Therefore, Pirtle relies on Dr. Ball's July 18, 2003 RFC statement, which indicated that her abilities increased.

In the July 18, 2003, RFC assessment, Dr. Ball stated that Pirtle had the following abilities and restrictions: frequently lift/carry ten pounds; occasionally lift/carry twenty-five pounds; stand/walk for four hours; sit for four hours; unlimited push/pull; frequently balance; occasionally climb, stoop, kneel, crouch and bend; frequently reach, handle, finger and feel; environmental restrictions include heights and climbing; and, estimated that it would be helpful in coping with symptoms to rest thirty minutes every three hours during an eight hour workday.

Following a review of the medical evidence and the administrative hearing, the ALJ determined that Pirtle has the following RFC:

> occasionally lift 20 pounds and frequently carry 10 pounds, stand and walk a total of 4 hours daily, 2 hours at a time . . . sit 4 hours daily, for 1 hour at a time . . . occasionally climb, stoop, kneel, crouch, and bend . . . should avoid heights and hazardous unprotected moving equipment . . . would benefit from 15 minute rest periods every 3 hours.

As the ALJ noted, the RFC finding "is consistent with Dr. Ball's [July 18, 2003] assessment, with the exception of his estimate of 30 minute rest periods, which is inconsistent with the assessment of claimant's treating rheumatologist, and with the other evidence of record."

-5-

Pirtle argues that the ALJ improperly disregarded the opinion of her treating physician because the ALJ relied on the RFC analysis of her treating rheumatologist. Pirtle correctly notes that the RFC analysis of the treating rheumatologist was conducted on March 26, 2001, while her previous applications for benefits were pending and prior to the relevant time period for the applications for benefits now before the court. We have previously found that the ALJ may consider all evidence of record, including medical records and opinions dated prior to the alleged onset date, when there is no evidence of deterioration or progression of symptoms. Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005). While the ALJ relies in part on the previous RFC of the treating rheumatologist, he also relies on other evidence in the record to discount the estimated time of beneficial rest.

The ALJ properly relied on the portion of Dr. Ball's opinion which was supported by substantial record evidence and properly disregarded the unsupported advisory portion of the treating physician's RFC opinion. The record establishes that Dr. Ball saw Pirtle numerous times during the relevant time period for a wide variety of complaints, including sinusitis, cough, congestion, GERD, palpitations, fibromyalgia, joint pain and frequent requests for medication refills. The ALJ determined that Pirtle's RFC was consistent with Dr. Ball's July 18, 2003 RFC assessment with the exception of Dr. Ball's reference to the advisability of thirty minute rest periods. Instead, the ALJ determined that Pirtle would benefit from fifteen minute rest periods. The ALJ considered the RFC analysis of Pirtle's treating rheumatologist, as well as the other evidence of record discounting this single portion of Dr. Ball's opinion. Further, we note that Dr. Ball's RFC assessment does not assert that the thirty minutes of rest every three hours is required. Rather, he indicates that such rest would be beneficial. Dr. Ball's treatment records do not indicate that he advised Pirtle to rest thirty minutes every three hours, nor do the treatment notes reflect that Pirtle reported that she experienced the need to rest for thirty minutes every three hours. Likewise, the treatment notes do not reflect that Pirtle routinely asserted fatigue as a complaint to Dr. Ball. The other evidence of record, Dr. Ball's

-6-

treatment notes, is not consistent with Pirtle's assertion that thirty minutes of rest every three hours are required. When a treating physician's record includes inconsistencies, his own inconsistency may undermine or diminish the weight afforded to his opinion. Hacker, 459 F.3d at 937.

Next, Pirtle contends that the ALJ erred in his consideration and analysis of the severity of her fibromyalgia. We reject Pirtle's challenge. We have previously recognized that fibromyalgia is a chronic condition which is difficult to diagnose and may be disabling, Garza v. Barnhart, 397 F.3d 1087, 1089 (8th Cir. 2005) (per curiam), and the ALJ properly found Pirtle's fibromyalgia to be a severe impairment and took the impairment into account when determining Pirtle's RFC. The ALJ specifically noted that Pirtle received sporadic treatment for joint pain and muscle spasms, but the treatment notes place a greater emphasis on treatment for menstrual cramping and bleeding, as well as pelvic pain. The medical records reveal only a minimal mention of musculoskeletal pain after mid-2001. After finding fibromyalgia to be one of Pirtle's severe impairments, the ALJ thoroughly analyzed Pirtle's fibromyalgia and treatment thereof during the relevant period. Thus, the ALJ properly analyzed and considered Pirtle's fibromyalgia.

Finally, Pirtle asserts that the ALJ erred in finding Pirtle's testimony less than credible. We cannot agree with Pirtle's assertion, because the ALJ's credibility determination was based on valid reasons. See Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination."). Pirtle and her husband testified that she was severely disabled. However, Pirtle also made inconsistent reports of her activities of daily living, such as the ability to: regularly drive a manual-transmission vehicle; shop; perform housework, such as cooking, cleaning, and washing dishes; fish; attend church two to three times per week; care for her personal needs; and home-school her two children. Because the ALJ's credibility determination was based on good reasons and supported

-7-

by substantial evidence, we defer to his judgment.  See Cox v. Barnhart, 471 F. 3d 902, 907 (8th Cir. 2006).  Although Pirtle alleged that she experienced pain which interfered with her ability to engage in work activity, the ALJ conducted the proper analysis with respect to Pirtle's nonexertional impairments and concluded that her pain would not interfere with her ability to perform a significant range of light work. Polaski v. Heckler, 739 F.2d 1320, 1321-22 (8th Cir. 1984) (per curiam order) (subsequent history omitted).

Accordingly, we affirm the judgment of the district court.

_____