# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1787

_____

Rosemary Hamilton,                      *
                                        *
          Appellant,                    *
                                        *     Appeal from the United States
     v.                                 *     District Court for the Eastern
                                        *     District of Arkansas
Michael J. Astrue,                      *
Social Security Administration,         *
Commissioner,                           *
                                        *
          Appellee.                     *

_____

Submitted: January 16, 2008
Filed:  March 10, 2008

_____

Before LOKEN, Chief Judge, MURPHY, Circuit Judge, and JARVEY, District Judge.[1]

_____

JARVEY, District Judge.

Rosemary Hamilton applied for Social Security disability insurance benefits and supplemental security income on May 9, 2003, claiming a disability onset date of July 19, 2002. Hamilton alleges she is disabled and unable to work due to lupus,

_____

[1]Judge John A. Jarvey, United States District Judge for the Southern District of Iowa, sitting by designation.

fibromyalgia, arthritis in her neck and back, scoliosis, narcolepsy, pain and weakness in her knees, numbness and tingling in her hands and feet, and poor memory. A Social Security Administration Administrative Law Judge (ALJ) held a hearing on March 9, 2005, and found that Hamilton was not disabled. The Appeals Council denied review, both initially, and again after considering additional evidence submitted by Hamilton. Hamilton filed this action for judicial review. The district court[2] upheld the final agency decision. Hamilton appeals the judgment of the district court affirming the Commissioner's final decision, arguing that the ALJ's determination that she can perform her past work as a data entry clerk is not supported by substantial evidence in the record as a whole. Specifically, Hamilton argues that the ALJ erroneously discounted the opinion of her treating physician and improperly discredited her subjective complaints.

This court reviews de novo a district court's decision upholding the denial of Social Security benefits. Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006). The Commissioner's decision must be affirmed if it is supported by substantial evidence in the record as a whole. Id. "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000). The whole record is considered, "including evidence that supports as well as detracts from the Commissioner's decision, and we will not reverse simply because some evidence may support the opposite conclusion." Pelkey, 433 F.3d at 577.

"A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Singh v. Apfel, 222 F.3d 448, 452 (8th

---

[2]The Honorable Jerry W. Cavaneau, United States Magistrate Judge for the Eastern District of Arkansas.

-2-

Cir. 2000) (citation omitted). The regulations require the ALJ to give reasons for giving weight to or rejecting the statements of a treating physician. See 20 C.F.R. § 404.1527(d)(2). Whether the ALJ gives great or small weight to the opinions of treating physicians, the ALJ must give good reasons for giving the opinions that weight. Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001). Moreover, a treating physician's opinion does not deserve controlling weight when it is nothing more than a conclusory statement. Piepgras v. Chater, 76 F.3d 223, 236 (8th Cir. 1996). See also Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991) (holding that the weight given a treating physician's opinion is limited if the opinion consists only of conclusory statements).

During the relevant period under consideration in this case, Hamilton primarily treated with Dr. Judith Butler, M.D. In according little weight to Dr. Butler's opinion that Hamilton is disabled, the ALJ found that Dr. Butler's opinion is not consistent with the clinical and laboratory findings in this case. The ALJ further found that Hamilton's fibromyalgia and lupus were poorly documented. The ALJ was entitled to give Dr. Butler's opinion less deference.

From November 2003 through May 2004, Hamilton saw Dr. Butler on a monthly basis. "Opioid Progress Reports" were generated for each visit and are part of the record. During these visits, Hamilton rated her weekly pain as seven, eight, or nine on a ten point scale where zero equaled no pain and ten equaled the worst possible pain. However, Dr. Butler rated Hamilton's level of function as a five on one occasion, and either an eight or nine on all subsequent visits, on a ten point scale where zero equaled "severe impact on function at home or at work" and ten equaled "returned to level of function prior to injury." Moreover, Dr. Butler consistently answered in the affirmative the question, "Has there been overall improvement in the

patient's pain and function since opioids were first used to treat the patient's chronic pain, in terms of daily living or work activities?" Moreover, certain portions of these reports, which Hamilton represents to the court as Dr. Butler's opinion that she is unable to work, are replete with misspellings[3] and the handwriting and signature on the majority of these reports appear to be inconsistent with Dr. Butler's other records.

On August 1, 2003, Hamilton was consultatively examined by Dr. Shalender Mittal at the request of the Social Security Administration. Dr. Mittal's examination of Hamilton's cervical spine revealed normal degrees of forward flexion and extension. Dr. Mittal's examination of her lumbar spine revealed flexion possible to about 75 degrees with some discomfort beyond that. Hamilton's straight leg raising was normal bilaterally with no evidence of muscle spasm. There was no evidence of any joint abnormalities of the extremities, and no evidence of any muscle weakness or atrophy. Hamilton's gait was essentially normal and her grip was estimated at 100% of normal. Dr. Mittal opined that, "[t]he severity of limitation would be considered mild at this time."

On March 17, 2004, Dr. Butler completed a "Medical Source Statement" wherein she outlined Hamilton's physical limitations for the period July 11, 2001 to date. Dr. Butler opined that Hamilton could frequently lift and/or carry less than 10 pounds, occasionally lift and/or carry less than 10 pounds, stand and/or walk a total of four hours (less than 30 minutes continuously), and sit a total of four hours (less than 30 minutes continuously). Dr. Butler further opined that Hamilton's ability to push and/or pull was limited due to swelling, weakness, and constant pain. Dr. Butler opined that Hamilton should never climb, balance, stoop, kneel, or crouch; was limited in her ability to reach, handle, finger, or feel; and could only bend occasionally. Dr. Butler explained that Hamilton cannot lift because of hand

---

[3]The more troubling misspellings include "functionaly," "funchenal," "fybromyliagia," "leggs," and "worst" (in lieu of "worse").

weakness, decreased coordination, and swelling. Dr. Butler also noted abnormal lab results, which are consistent with fibromyalgia, hypothyroidism, and neuropathy.

Hamilton was hospitalized on May 14, 2004, for a prescription drug overdose following an automobile accident where she hit an ice machine at a gas station. Medical records of her hospitalization state, "She has a history of prescription drug abuse and has been seen by Dr. Butler." An examination of Hamilton during the course of her hospitalization revealed a full range of motion in her extremities and no edema. Hamilton had another motor vehicle accident on July 2, 2004. Hospital records associated with this accident indicated no vertebral tenderness of Hamilton's back and a normal range of motion of extremities. An x-ray of Hamilton's cervical spine revealed no fracture, normal alignment, and normal soft tissues. A CT scan of Hamilton's cervical spine revealed no gross sign of deformity or fracture. Hamilton left the hospital on July 3, 2004, against medical advice.

In November of 2004, Hamilton established care with Dr. Roger Cagle. At her November 2004 visit, Hamilton's chief complaint was lower back pain related to a recent motor vehicle accident. Hamilton complained of aching all over her body, fatigue, and weight gain. She also complained that her knee "pops out." Dr. Cagle's physical examination revealed good strength in all extremities. Records of Hamilton's treatment with Dr. Cagle from December 2004 through August 2005 indicate that Hamilton denied chronic fatigue and reported no unusual weakness or drowsiness.

On January 27, 2005, a CT scan was taken of Hamilton's lumbar spine following a fall. No spinal stenosis, disc herniation or nerve root displacement was identified, and no fracture was seen. A CT scan of her left knee revealed "Degenerative changes of the articulating surfaces of the knee. Micro-fracture involving the cortex of the femur posterior to the patella. Degenerative change consistent with chondromalacia of the posterior patellar surface. Bony demineralization."

On March 11, 2005, Hamilton was hospitalized as a result of an overdose of prescription medication. She was found by police sleeping in a ditch. Hamilton was discharged against medical advice on March 12, 2005. Hamilton was hospitalized again from June 27, 2005 to July 6, 2005, following a fall related to a prescription drug overdose. She was diagnosed with an intracranial bleed. Hamilton's final diagnoses included multiple cerebral contusions, uncontrolled diabetes, dysarthria, closed head injury, and post traumatic subarachnoid hemorrhage. A June 28, 2005, CT scan of Hamilton's cervical spine revealed "mild degenerative change of the cervical spine" only. An x-ray of her cervical spine revealed no gross deformity.

The medical evidence, when viewed in its entirety, does not support Dr. Butler's conclusory opinion that Hamilton is disabled. The inconsistencies within Dr. Butler's medical records alone, as set forth above, provide appropriate reasons for the ALJ to discount her opinion. The hospital records, Dr. Cagle's records, and Dr. Mittal's findings, are inconsistent with Dr. Butler's opinion. Because of this, the ALJ was entitled to give Dr. Butler's opinion less deference.

Finally, Hamilton argues that the ALJ improperly discredited her subjective complaints in formulating her Residual Functional Capacity (RFC). Hamilton testified that she experiences no side effects from the medications she takes. Hamilton testified that her normal day is spent alternating from her sofa to her recliner trying to get comfortable, and that she is lucky to get two to three hours of sleep per night. Hamilton testified that she can sit comfortably in a chair for 30 to 40 minutes before starting to fidget, but can stand no more than 10 to 15 minutes at a time. Hamilton testified that she cannot walk very far before her left knee pops out of joint and she falls down. She claimed that she cannot run, jump, bend over forward, lift anything over five pounds, or push or pull things. Hamilton testified that she can follow directions, but cannot maintain attention and concentration for a very long time, and that her memory is terrible. Hamilton finally testified that her narcolepsy causes her to fall asleep unexpectedly two to three times per week, and that she cannot afford the

medication necessary to treat this condition. The ALJ found Hamilton's testimony was not entirely credible because it was inconsistent with the objective medical evidence and other evidence of record.

The ALJ ultimately determined that Hamilton had the RFC to perform sedentary work with the following restrictions. She could stand and walk for four hours in an eight hour work period, sit for six hours in an eight-hour work period, occasionally lift and carry 10 pounds, occasionally climb, stoop, crouch, kneel and crawl, push and pull 10 pounds, and was unlimited in her ability to reach, handle, feel, see, hear, and speak. In response to a hypothetical question setting forth the RFC outlined above, the vocational expert testified that Hamilton retained the ability to perform her past relevant work as a data entry clerk. The ALJ noted in his opinion that "in the instant case, the claimant has enhanced the extent of her functional loss," and further noting that Hamilton's "verbal and nonverbal actions during the hearing did not show that she was experiencing debilitating pain or any other sensations that would render her disabled." Finding Hamilton to be "not very credible," the ALJ concluded that Hamilton's testimony was inconsistent with the objective medical evidence and other evidence of record.

This court will defer to the ALJ's credibility determinations as long as they are "supported by good reasons and substantial evidence." Pelkey, 433 F.3d at 577 (quoting Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005)). "Subjective complaints may be discounted if the evidence as a whole is inconsistent with the claimant's testimony." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1994).

The record as a whole contains little objective evidence, medical or otherwise, to support Hamilton's claim of disability. As set forth above, Dr. Butler's medical records do not consistently support Hamilton's claim of disability. Hamilton's other medical records do not support Hamilton's claim of disability. The ALJ's credibility analysis was proper and will not be disturbed.

For these reasons we affirm the judgment of the district court.

_____