# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1635

_____

Scott S. Kriebaum               *
                                         *
            Appellant,        *
                                         *    Appeal from the United States
      v.                            *    District Court for the Eastern
                                         *    District of Missouri.
Michael J. Astrue,           *
Commissioner of Social Security,   *
                                         *    [UNPUBLISHED]
            Appellee.         *

_____

Submitted: December 14, 2007
Filed: June 6, 2008

_____

Before RILEY, COLLOTON, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

      Scott S. Kriebaum applied for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 405. His applications for benefits were denied by the Commissioner of Social Security. The district court[1] affirmed. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

      [1]The Honorable Mary Ann Medler, United States Magistrate Judge for the Eastern District of Missouri, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

Kriebaum was 44 years old at the time of the hearing before the Administrative Law Judge ("ALJ"). The Administrative Record indicates he has a high school education, took Air Force and technical classes, and attended vocational rehabilitation. He worked as a factory worker, laborer, roofer, and painter. He also was in the Air Force for 16 years, employed as an aviation technician. Kriebaum filed for disability insurance benefits in October 2003, alleging he was disabled and unable to work due to an injury of the right ankle, which caused severe and chronic pain. At the hearing, he claimed a disability onset date of September 1, 2003.

Kriebaum was injured when he fell six to eight feet from a ladder in January 2002. He fractured his right heel, requiring three surgeries in February 2002, April 2004, and March 2005. He underwent physical therapy after the first surgery, which included three sessions per week of training and strengthening the right foot and ankle. He regularly took pain medicine with no side effects.

At the hearing, Kriebaum testified he went back to work after his first surgery. He stated that the gap in his medical records between 2002 and 2004 was because he was working. He said he applied for unemployment benefits and received them in the fourth quarter of 2003 and the first quarter of 2004. And although Kriebaum testified that his mother handled the household chores, other records indicate he had no problems performing them, including home repairs and car maintenance.

In a written decision, the ALJ concluded that Kriebaum was not disabled, applying the five-part test.[2] The ALJ determined that Kriebaum had not engaged in

---

[2] The five-part test is: "1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not, 5) whether the claimant can perform any other kind of work." ***Hepp***

substantial gainful activity since his onset date, that he has a severe impairment, and that his impairment does not meet or medically equal the requirements of any listed impairment. At step four, the ALJ found that Kriebaum was unable to perform past relevant work, but retained the residual functional capacity ("RFC") to do light and sedentary exertional work. In making this determination, the ALJ examined the objective medical evidence and evaluated Kriebaum's subjective claims of pain under the *Polaski* factors.[3] The ALJ found Kriebaum not credible because: (1) the medical history, medication records, and other evidence did not substantiate the nature, intensity, and persistence of his alleged pain; (2) medical records after his first surgery showed he regularly rode his bike long distances, walked five miles, and went arrowhead hunting; (3) his use of a cane is self-prescribed; (4) he testified to no side effects from the prescribed medication; (5) records demonstrate his pain mildly affects his daily living activities; (6) he smokes a pack of cigarettes per day even after being informed that smoking hinders the healing process; (7) earnings records demonstrate he returned to work after the first surgery; (8) he applied for and received unemployment benefits, which require a willingness and ability to work; and (9) no current reports from any acceptable medical source state he cannot work or is disabled. Moving to the last step, the ALJ noted Kriebaum was a younger individual

---

*v. Astrue*, 511 F.3d 798, 803 n.4 (8th Cir. 2008), *citing* **20 C.F.R. § 416.920**. Through step four, the claimant has the burden of showing that he is disabled. *See* **Snead v. Barnhart**, 360 F.3d 834, 836 (8th Cir. 2004). If the analysis reaches step five, the burden shifts to the Commissioner to show other jobs in the economy that the claimant can perform. *See* **id.**

[3]"Under *Polaski*, an ALJ cannot simply reject complaints of pain because they were not supported by objective medical evidence. Instead, the ALJ must fully consider all evidence relating to the subjective complaints, including the claimant's work record, as well as observations of the claimant by others (including treating and examining doctors) as to such matters as her daily activities; the intensity, duration, and frequency of her pain and the conditions causing and aggravating the pain; and her functional limitations." **Ford v. Astrue**, 518 F.3d 979, 982 (8th Cir. 2008), *citing* **Polaski v. Heckler**, 739 F.2d 1320, 1321-22 (8th Cir. 1984).

with a high school education, semi-skilled work experience, and transferable work skills. Based on his RFC and the Medical-Vocational Guidelines, the ALJ concluded he could perform other kinds of work in the economy.

The district court affirmed the ALJ's decision. Kriebaum appeals, asserting substantial evidence does not support the ALJ's decision and testimony of a licensed vocational expert was required.

## II.

"This court reviews de novo a district court's decision upholding the denial of Social Security benefits." *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008). If the Commissioner's decision is supported by substantial evidence in the record as a whole, this court must affirm. *Id.* "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Id.*, *quoting Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). It is less than a preponderance. *Pirtle v. Astrue*, 479 F.3d 931, 933 (8th Cir. 2007). This court must consider the whole record, "including evidence that supports as well as detracts from the Commissioner's decision." *Hamilton*, 518 F.3d at 610. This court will not reverse "simply because some evidence supports a conclusion other than that of the Commissioner." *Pirtle*, 479 F.3d at 933.

Additionally, this court defers to the ALJ's credibility determinations if they are "supported by good reasons and substantial evidence." *Hamilton*, 518 F.3d at 613, *quoting Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006). "Subjective complaints may be discounted if the evidence as a whole is inconsistent with the claimant's testimony." *Hamilton*, 518 F.3d at 613, *quoting Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

Kriebaum argues substantial evidence does not support the ALJ's conclusion that he retains the RFC to do light exertional work. Light exertional work includes maximum lifting of 20 pounds; frequent lifting of 10 pounds; and standing or walking for six out of eight hours. "The ALJ should determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006).

Contrary to Kriebaum's arguments, substantial evidence supports the ALJ's conclusion. After his first surgery, medical records noted Kriebaum biked long distances, walked five miles, and went arrowhead hunting.[4] Medical records also demonstrated physical therapy was helping the injury. Kriebaum points out that medical records from a veterans hospital dated September 30, 2003, indicate he had aggravated pain and should keep weight off his right foot. However, the same medical records released Kriebaum to return to work on October 2, 2003. Further, Dr. Chalk's letter of June 6, 2005, supports the ALJ. Dr. Chalk stated he last saw Kriebaum in May, after his third surgery, and that Kriebaum said his foot was feeling much better than it has previously. Dr. Chalk wrote that he instructed Kriebaum to wean out of his boot into normal footwear, and that Kriebaum will be able to return to some type of work with vocational rehabilitation. Although Dr. Chalk's letter also provides limitations (i.e., "his restriction will be placed on working on concrete or non-irregular foreign"), the RFC is consistent with these limitations as it is limited to light or sedentary exertional work. *See McGeorge v. Barnhart*, 321 F.3d 766, 768

---

[4] Kriebaum asserts these medical entries were made on dates before the disability onset date and should have no bearing on his contention that he has been unable to engage in any sort of employment since the onset date. The ALJ, though, "may consider all evidence of record, including medical records and opinions dated prior to the alleged onset date, when there is no evidence of deterioration or progression of symptoms." *Pirtle*, 479 F.3d at 934, *citing Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005).

(8th Cir. 2003) ("'Residual functional capacity' is what the claimant is able to do despite limitations caused by all of the claimant's impairments.") (internal quotation marks omitted).  Likewise, Dr. Tippett's record is also consistent with the ALJ's RFC determination of light exertional work.  Although completed in November 2003, months before the second surgery, it indicates that Kriebaum has a "slight limp on his right side" with "tenderness in the right foot."  It also notes that Kriebaum does not require external assistance in walking.

Kriebaum contends the Social Security Counselor's report of January 12, 2004, demonstrates he cannot stand or walk six out of eight hours.  The report states:

> The clmt is limited in extended walking and standing due to a severe right calcaneus fx.  He has been told that further surgery could improve his mobility and decrease his pain, however, the clmt does not have the insurance to have the procedure.  Therefore, he is limited to sedentary activity which is consistent with his MDI.

This opinion, though, is not consistent with the other medical evidence and is not from his treating physician, or surgeon. It should be given less weight than the opinions of Dr. Chalk, who performed the last two surgeries; Dr. Lusardi, who performed the first surgery; and Dr. Tippett, who provided a consistent opinion.  *See* **20 C.F.R. § 404.1527(d)(1)-(6)**.  Moreover, Kriebaum had two more surgeries after  this report. As indicated, the surgeries improved his mobility and decreased his pain.

Therefore, substantial medical evidence supports the ALJ's determination. *See* ***Cox v. Astrue***, 495 F.3d 614, 619 (8th Cir. 2007) ("Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace.").

Additionally, the ALJ did not err in finding Kriebaum's testimony less than credible.  The ALJ's credibility determinations are supported by good reasons and

substantial evidence. *See Hamilton*, 518 F.3d at 613; *Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) (holding that where adequately supported, credibility findings are for the ALJ to make); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination.").

III.

Kriebaum argues the ALJ erred in using the Medical-Vocational Guidelines, and not the testimony of a licensed vocational expert, to find him not disabled.

"When a claimant suffers from exertional and nonexertional impairments, and the exertional impairments alone do not warrant a finding of disability, the ALJ must consider the extent to which the nonexertional impairments further diminish the claimant's work capacity. If the claimant's characteristics do not differ significantly from those contemplated in the Medical-Vocational Guidelines, the ALJ may rely on the Guidelines alone to direct a finding of disabled or not disabled." *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003), *quoting Lucy v. Chater*, 113 F.3d 905, 908 (8th Cir. 1997). "In other words, . . . 'an ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines.'" *McGeorge*, 321 F.3d at 768-69, *quoting Thompson v. Bowen*, 850 F.2d 346, 349-50 (8th Cir. 1988).

Here, the use of the Guidelines was proper. The ALJ concluded the medical records failed to show any significant effect of pain on Kriebaum's functional abilities. The records indicated he rode his bike long distances, walked five miles, and went arrowhead and squirrel hunting. The use of the cane was self-prescribed, and he took pain medicine without side effects. Other records showed that his injury and

allegations of pain did not have any effect on daily activities. He was able to perform household chores, including car maintenance and home repair. Because the record supports the finding that Kriebaum's nonexertional impairment does not diminish his RFC to perform the full range of activities listed in the Guidelines, the ALJ did not err in relying on them alone. *See* **Thompson**, 850 F.2d at 349 ("Thus, if the ALJ determines that a claimant's nonexertional limitations do not affect the claimant's residual functional capacity then the ALJ may rely on the Guidelines to direct a conclusion of either disabled or not disabled without resorting to vocational expert testimony.").

IV.

The judgment of the district court is affirmed.

_____