**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2575
_____

BARBARA LOUIS,
                            Appellant

v.

COMMISSIONER SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-18-cv-01191)
District Judge:  Honorable Timothy J. Savage
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 24, 2020

Before: AMBRO, GREENAWAY, JR., and PORTER, <u>Circuit</u> <u>Judges</u>

(Opinion filed April 14, 2020)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Barbara Louis, proceeding pro se, appeals from an order of the United States District Court for the Eastern District of Pennsylvania denying her request for review of the Commissioner of Social Security's denial of her application for supplemental security income (SSI). For the following reasons, we will affirm.

Louis filed for SSI benefits effective September 11, 2013, when she was 36 years old. Her disability claim was predicated on physical ailments, including lower back and knee pain, and mental health impairments, including bipolar disorder and depression. Her application was denied at the initial level of administrative review. Pursuant to her request, a hearing was held before an administrative law judge (ALJ) in 2016. In 2017, the ALJ rendered an unfavorable decision, and the Appeals Council denied her request for review. Louis, represented by counsel, filed a civil action in the District Court, seeking judicial review of the Commissioner's final decision. The District Court, adopting the Magistrate Judge's report and recommendation (R&R), affirmed the Commissioner's decision, and this appeal ensued.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the Commissioner's legal conclusions and review the ALJ's factual findings to determine whether they are supported by substantial evidence. Allen v. Barnhart, 417 F.3d 396, 398 (3d Cir. 2005). The substantial evidence standard is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation

marks and citation omitted). We are precluded from reweighing the evidence or making our own factual determinations. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011) (citing Richardson, 402 U.S. at 401).

A claimant suffers from a "disability" as defined in the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled, pursuant to 20 C.F.R. § 416.920.[1] In doing so, the ALJ considered Louis's physical, psychological, and consultative examinations, medical treatment, and testimony. After finding that Louis was not involved in substantial gainful activity, the ALJ determined that Louis had a severe impairment of degenerative disc disease, degenerative joint disease, osteoarthritis, obesity, affective disorders, anxiety, and schizoaffective disorder, but that none of these impairments met or was medically equivalent to any presumptive disabling listed impairment. The ALJ further concluded that although Louis was limited in her ability to perform basic work activities, she retained the RFC to perform sedentary work. In so

---

[1] Under the sequential evaluation process, the ALJ must determine whether a claimant (1) is engaged in substantial gainful activity; (2) has a "severe" medical impairment; (3) has an impairment that would render her *per se* disabled; (4) retains "residual functional capability" (RFC) to perform past work; and (5) can perform any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520.

3

concluding, the ALJ determined Louis's statements regarding the intensity, persistence, and limiting effects of the pain associated with her impairments to be inconsistent with the medical evidence and other evidence in the record.

Louis raised three challenges to the ALJ's decision before the District Court: that the ALJ did not reasonably explain her RFC assessment, that she rejected medical opinion evidence without reasonable explanation, and that she failed to reasonably explain her rejection of written statements from a lay witness. The District Court determined that the ALJ's decision was supported by substantial evidence. After a thorough review of the administrative record, we agree.[2]

We first address Louis's contention that the ALJ failed to adequately support her RFC assessment. The "residual functioning capacity" is the most a claimant "is still able to do despite the limitations caused by . . . her impairments." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001). Although a claimant bears the burden of establishing her RFC, see 20 C.F.R. § 416.912(a), the ALJ makes the ultimate disability and RFC

---

[2] We construe Louis's informal brief liberally to argue that the ALJ's decision is unsubstantiated for the reasons she argued in the District Court. See United States v. Otero, 502 F.3d 331, 334 (3d Cir. 2007) (noting that pro se pleadings are construed liberally). However, we will not entertain the arguments that she raises for the first time on appeal, including that she is currently receiving homecare services and suffers from asthma, as they are waived, see Smith v. Comm'r Soc. Sec, 631 F.3d 632 (3d Cir. 2010), and we find no circumstances here warranting an exception to this long-standing rule. See Matthews v. Apfel, 239 F.3d 589, 592-93 (3d Cir. 2001) (holding that where a claimant brings new evidence, remand is appropriate only if it is material and good cause is shown for failing to previously present it).

determinations.  See 20 C.F.R. §§ 404.1527(d), 404.1546(c); Chandler v. Comm'r Soc.

Sec., 667 F.3d 356, 361 (3d Cir. 2011).

The ALJ determined that Louis retained the RFC to perform sedentary work as

defined in 20 C.F.R. § 416.967(a) except:

> She can occasionally kneel and crawl; she can occasionally
> be exposed to unprotected heights and moving mechanical
> parts; she can perform simple, routine, and repetitive tasks
> but not at a production rate pace, she is limited to simple
> work-related decisions; she can occasionally interact with
> supervisors and coworkers but can never interact with the
> public; and she can tolerate occasional changes in work
> setting[.]

ALJ Op. at 23.  We first reject out of hand Louis's assertion that the RFC assessment was

merely a summary of the evidence lacking sufficient explanation.  The ALJ's RFC

assessment was approximately seven pages long; the narrative discussion highlighted key

medical and non-medical evidence, noting inconsistencies and distinguishing the

evidence which supported the result.  The ALJ gave detailed reasons for discounting

certain opinion evidence and crediting others, and she explained how she accounted for

specific evidence to support certain elements of her RFC assessment.  As the District

Court's more detailed analysis makes clear, the ALJ's RFC assessment was sufficiently

supported by the record.

### Physical Impairments

With respect to the physical RFC, Louis contends that the ALJ failed to provide a

sufficient basis for rejecting Dr. Floyretta Pinkard's medical opinion evidence.  In April

2014, Pinkard performed a physical consultative examination of Louis and found that she had a normal gait, could walk on heels and toes without difficulty, could squat to 75%, was able to get on and off the examining table and to rise from a chair without difficulty. Pinkard also found that Louis's bilateral straight-leg tests were negative, and that she had no evidence of joint deformity or tenderness and no bilateral knee or leg tenderness. Louis was found to have moderate left lumbar paraspinal muscle spasm and tenderness, but full normal 5/5 strength in her upper and lower extremities with normal sensation and reflexes and intact finger and hand dexterity with normal 5/5 grip strength. R 454-466. Finally, Pinkard noted that Louis could handle her personal care on a daily basis, and that she could cook, clean, do laundry and shop on a weekly basis. In a "Medical Source Statement of Ability to do Work-Related Activities (Physical)," Pinkard opined, in pertinent part, that Louis could never stoop, kneel, crouch or crawl. R. at 461.[3] The ALJ gave "little weight" to Pinkard's opinion after concluding that it was unsupported by the other physical examinations in the record.

---

[3] Louis argues that a determination that a claimant can never stoop requires a decision of disabled pursuant to Social Security Ruling (SSR) 96-9p. That Ruling, which addresses the effect postural and other non-exertional limitations have on the sedentary occupational base, recognizes that "[a] complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply." SSR 96-9p, 61 Fed. Reg. 34478-01 (July 2, 1996). The Ruling does not mandate a finding of disability; rather it instructs that "consultation with a vocational resource may be particularly useful" in cases where the claimant "is limited to less than occasional stooping." Id.; see also Lauer v. Apfel, 169 F.3d 489, 493 (7th Cir. 1999) ("There is no basis to assert that SSR96-9 requires a finding of disability in cases where a claimant is unable to stoop.").

6

Although Dr. Pinkard's opinion must be treated as expert opinion evidence by a non-examining source, the ALJ was not bound by Pinkard's findings. See SSR 96-6p. Whether or not Louis can perform occupational duties is a legal determination reserved for the Commissioner. See 20 C.F.R. § 404.1527(d). While we agree with Louis that Pinkard's assessment was consistent with the other examinations in the record in many respects, substantial evidence supports the ALJ's conclusion that the severe functional limitations found by Pinkard were inconsistent with the medical record as a whole. As the ALJ noted, Louis's treatment records, which include radiology reports of x-ray and MRI results, indicate that she had bilateral knee osteoarthritis which was repeatedly described as "mild" or "minimal." See R. at 538, 539, 541, 568-69, 570, 587, 589, 626, 696; see also Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) (noting that treating physicians' reports are entitled to greater weight than non-treating physicians' or a one-time examiner's). And contrary to Louis's contention, the record is replete with treatment records indicating that the range of motion in her knees was generally within normal limits.[4] R. at 538, 541, 626, 635, 638-43, 698.[5] Indeed, an orthopedic specialist,

_____

[4] The treatment notes from 2012 do not, as Louis maintains, indicate an issue with lower extremity range of motion. See R. 425, 432.

[5] Some of these reports, which the ALJ relied on, are authored by a Physician's Assistant. See, e.g., R. at 721-723. Only licensed physicians and certain other qualified specialists are considered "[a]cceptable medical sources." 20 C.F.R. § 404.1527(a); SSR 06–03p, 2006 WL 2329939, at *1 (Aug. 9, 2006). Physician's assistants are defined as "other sources," and while not entitled to the same deference, they are entitled to some

7

Dr. Gene Shaffer, "reassure[d]" Louis of the "lack of mechanical issues" with the knee and recommended the "continued conservative arthritic knee care." R. at 643; see Mason, 994 F.2d at 1066-67 (noting that a medical specialist's opinion is entitled to greater deference than that of a non-specialist).

With regard to her history of back pain, an MRI revealed that Louis had "broad based disc protrusion at L4-L5 . . . with only a small focal midline disc herniation," and a radiologic examination indicated "[m]ild spondylosis" and "[f]acet arthritis in the lower lumbar spine." R. at 526, 590. Although she had decreased range of motion and muscle spasms, she consistently had negative straight-leg raising tests, and normal sensations and muscle strength. See, e.g., R. at 584, 657, 668. Most notably, Louis responded well to conservative treatment and her condition improved. In July 2015, she received a medial branch nerve block injection in her lumbar spine; afterwards, her treating physician noted that the "pain relief was significant." R. at 665-666. In a follow-up visit, she reported that "her back feels much better." R. at 662. As the ALJ observed, from then until her decision, there was a "rather long treatment gap for [Louis's] degenerative disc disease."[6]

weight. Id. at *2-4; 20 C.F.R. § 404.1527(b). Notably, the physician's assistant reports indicate that she was working "under the direct supervision" of a physician. See Molina v. Astrue, 674 F.3d 1104, 1111 & n.3 (9th Cir. 2012). In any event, her findings are consistent with those made separately by treating physicians and specialists. See, e.g., R. at 568, 570, & 643.

[6] Although Louis complained of back pain in September and October 2015, she was determined "to be getting medication from multiple doctors. Paying with insurance on some and paying cash on others." She was discharged from the practice. R. at 657-58.

In sum, the overall medical evidence supported the ALJ's determination that the degree of Louis's physical functional limitations was less than that found by Pinkard.

Mental Impairments

Next, Louis contends that the ALJ did not reasonably explain her decision to discount medical opinion evidence that the severity of her bipolar disorder rendered her unable to work. Specifically, she maintains that the ALJ assigned too much weight to the opinion of Dr. Urbanowicz, the non-examining consultative examiner, and too little weight to Dr. David Frankel, her treating psychiatrist, and Dr. David Waid, an examining consultant. We disagree. See Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("We are also cognizant that when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them.").

In a letter dated July 20, 2012, Dr. David Frankel, a psychiatrist who had been treating Louis for two years,[7] stated:

> Ms. Louis has been taking medication to control her symptoms. Nonetheless, she still has breakthroughs. It. Is (sic) not difficult for Ms. Louis to lose control, become angry, shout, and be unable to be redirected. The last time she did this was over a mistake in scheduling. I do not believe that Ms. Louis would be able to withstand pressures, and directives in a work situation. It would be hard to work with someone whose mood and behavior cannot be counted on.

---

[7] Frankel started treating Louis in 2010, when she presented complaining of chronic depression, anxiety, and panic attacks, as well as psychotic symptoms, including visual and auditory hallucinations.

R. at 367.  The ALJ gave "partial weight" to this letter-opinion because, although Frankel was a treating source, the letter was written before Louis's application date and alleged onset date, and because it was found to be inconsistent with the objective medical record, which included Frankel's treatment notes through 2016 which indicate that Louis has "done well on [the medications]," has become "asymptomatic," and has remained "stable for a long period of time."  R. at 516-17, 543-44.  The "ALJ may consider all evidence of record, including medical records and opinions dated prior to the alleged onset date, when there is no evidence of deterioration or progression of symptoms." Pirtle v. Astrue, 479 F.3d 931, 934 (3d Cir. 2007); see also 20 C.F.R. § 416.912 (requiring a claimant to provide medical evidence of an impairment, its severity, and how it affects her functioning "for any period in question").  It cannot be disputed that, in the four years after Frankel rendered that opinion, his treatment notes document a marked and dramatic improvement with regard to Louis's mental health.  R. at 517 (noting that Louis "has been able to remain euthymic, not psychotic, and [her] anxiety is under control").  As the record indicates, Louis was consistently calm and cooperative upon exam, and her prognosis was "good."  R. at 517, 544.  The ALJ was therefore entitled to discount Frankel's 2012 assessment where it was undermined by the more "detailed,

10

longitudinal picture" provided by his later medical assessments.  20 C.F.R. §

404.1527(c)(2).[8]

These treatment records also support the ALJ's decision to discount the

consultative psychiatric evaluation performed by Waid on January 7, 2014.  R. at 447-

450.  Waid's opinion was based solely on his examination of Louis and information that

she provided at the time.  He reported that Louis was "highly irritable and suspicious, but

cooperative."  She was "paranoid, delusional" and experiencing auditory hallucinations

during the evaluation.  Her intellectual functioning was described as limited.  Waid stated

that the "results of the present evaluation appear to be consistent with psychiatric

problems that would significantly impair the claimant's ability to function with others on

a daily basis."

In a "Medical Source Statement of Ability to Do Work-Related Activities

(Physical)," Waid opined that, in light of her mental impairments, Louis's ability to

interact with the public was extremely limited, her ability to interact with supervisors was

markedly limited, and her ability to interact with co-workers was markedly to extremely

limited.  R at 452.  He also concluded that her ability to follow instructions was mildly

---

[8]  The record supports the ALJ's decision to give "partial weight" to the GAF score of 46 assessed by Frankel, which indicates serious symptoms or impairment.  As the ALJ noted, a GAF score provides only a snapshot of a claimant's level of functioning and is an unreliable indicator of a claimant's overall disability status.  See Sizemore v. Berryhill, 878 F.3d 72, 82 (4th Cir. 2017).  Louis's GAF score was assessed in 2010, prior to her alleged onset date, and at the beginning of her treatment with Dr. Frankel. See R. at 377.

impaired, but her ability to make judgments on simple work-related decisions and to understand, remember, and carry out complex instructions was markedly limited. The ALJ was entitled to ascribe only "partial weight" to Waid's opinion because it was "based on a one-time evaluation" of Louis and the treatment records since that time show "far less severe findings upon exam." ALJ Op. at 28.

Louis relies on this Court's decision in Morales v. Apfel, in arguing that the fact that she is clinically stable and medication compliant does not necessarily support the conclusion that she can return to work. 225 F.3d 310, 319 (3d Cir. 2000). In Morales, the ALJ rejected a treating physician's conclusion "that Morales's mental impairment rendered him markedly limited in a number of relevant work-related activities" based on the ALJ's personal observations of Morales at the administrative hearing, evidence that he was malingering, and the same physician's notations that Morales was "stable and well controlled with medication." Id. at 317, 319. In contrast, Dr. Frankel's opinion that Louis could not withstand the pressures of work was made at an earlier point in her treatment when she was still experiencing psychotic "breakthroughs." R. at 367; cf. Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 356 (3d Cir. 2008) (reversing where the ALJ's reliance on the physician's treatment note that the claimant's symptoms were stable with medication went against that physician's *coinciding* conclusion that the claimant was disabled). And after years of treatment, there were years of records noting

Louis's stability and lack of any symptoms. Moreover, the ALJ's determination that Louis's mental impairment did not prevent her from engaging in substantial gainful activity – the relevant inquiry – was supported by other objective evidence in the record, including that she was consistently noted to be calm and cooperative, reportedly got along with immediate family,[9] friends, and neighbors, could shop in stores by herself, attended community events, and had consistently normal findings with her cognition, memory, speech, judgment and insight.[10] See Morales, 225 F.3d at 319; R. at 517, 544.

Finally, Louis challenges the ALJ's decision to give "partial weight" to the two third-party function reports submitted by her mother. See R. at 284-291, 292-300. The ALJ thoroughly discussed these reports but discounted them in part because her mother was not an acceptable medical source or a disinterested party. ALJ OP. at 29. Even assuming it was error to rely on these bases, the error was harmless. See Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). The ALJ discounted Louis's mother's reports because they were inconsistent with the previously discussed objective medical evidence

---

[9] Although the records indicate that Louis reported getting along with her family, she testified before the ALJ that she does not speak to her brothers and sisters. See R. at 75-76.

[10] This record evidence was the basis for Dr. Urbanowicz's opinion, which the ALJ gave "great weight," that Louis was capable of performing a wide range of simple, unskilled tasks in a regular work environment despite her mental impairment. R. at 94-109. Specifically, Urbanowicz concluded that Louis was moderately limited in her ability to maintain attention, concentration, persistence, or pace, and moderately limited in her ability to carry out detailed instructions and to interact with the general public, coworkers and supervisors. R. at 107-08.

and medical opinions.  This reason was sufficient by itself to support the ALJ's decision.  See <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ need only give germane reasons for discrediting the testimony of lay witnesses.  Inconsistency with medical evidence is one such reason.") (internal citation omitted).  Moreover, we agree with the District Court that the ALJ's RFC assessment accommodated Louis's limitations in concentration, persistence, and pace to the extent that her mother's testimony in these areas was consistent with the record.

For these reasons, and in light of our overall examination of the record, we agree with the District Court that substantial evidence supports the ALJ's decision to deny Louis's SSI application.  Accordingly, we will affirm the judgment of the District Court.